UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| GAIL TIMMONS,<br><br>　　　　　　　　Plaintiff,<br><br>　　v.<br><br>NANCY A. BERRYHILL, Acting Commissioner of Social Security,<br><br>　　　　　　　　Defendant. | Case No. 3:17-cv-05912-BHS-BAT<br><br>**REPORT AND RECOMMENDATION** |

Plaintiff Gail Timmons appeals the Administrative Law Judge's ("ALJ") September 28, 2016, decision denying her disability insurance benefits. Dkt. 4. She seeks remand for the payment of benefits on the grounds the (1) vocational expert testimony that she would be absent from work one day per month establishes she is disabled, and (2) the ALJ violated the law of the case when he found Plaintiff would be absent from work one day per month when in his prior decision, he found Plaintiff would be absent two days per month. Dkt. 12.

The Commissioner contends the ALJ did not violate the law of the case because this Court previously found the residual functional capacity legally deficient; substantial evidence supports the ALJ's finding that Plaintiff can perform jobs that exist in significant numbers; and if the ALJ did err, the appropriate remedy is further administrative proceedings as the vocational evidence is in conflict. Dkt. 21.

The Court recommends that the Commissioner's decision be **REVERSED** and **REMANDED** for the immediate payment of benefits.

REPORT AND RECOMMENDATION - 1

**BACKGROUND**

This case stems from a March 21, 2011, application for Disability Insurance Benefits. Tr. 469. Plaintiff's date last insured is December 31, 2013. Tr. 470. Plaintiff alleged disability beginning November 20, 2010, due to symptoms stemming from hepatitis C, chronic obstructive pulmonary disease, cervical degenerative disc disease, obesity, carpal tunnel syndrome, major depressive disorder, and an anxiety disorder. *Id.* Plaintiff was first denied benefits on February 15, 2013. Tr. 19-29. The Court remanded this case for further proceedings on March 6, 2015, because the ALJ erred in evaluating the medical opinion of examining physician Raymond West, M.D., and with respect to the limitations found by Dr. West, in assessing plaintiff's residual functional capacity. Tr. 559-68.

After a second hearing, ALJ Glenn Meyers issued a decision on September 28, 2016, that Plaintiff was not disabled. Tr. 458-85. Plaintiff requested review, which was denied by the Appeals Council on September 22, 2017. Tr. 459-61. This appeal follows.

Utilizing the five step sequential evaluation process,[1] the ALJ found Plaintiff had the following severe impairments: history of chronic obstructive pulmonary disease; hepatitis C; carpal tunnel syndrome; depressive disorder; anxiety disorder; cervical degenerative disc disease; obesity; tobacco dependence; and substance abuse in remission. Tr. 470 (these were the same impairments found in the first decision, plus a history of chronic obstructive pulmonary disease and carpal tunnel syndrome. Tr. 470, 21).

The ALJ further found that, through the date last insured, despite her severe impairments, Plaintiff had the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except she was capable of engaging in unskilled, repetitive, routine tasks in two-

---

[1] 20 C.F.R. §§ 404.1520, 416.920.

hour increments. She could perform frequent pushing and pulling with the upper extremities. She could perform occasional stooping, squatting, crouching, crawling, kneeling and climbing of stairs and ramps. She could not climb ropes, ladders, or scaffold. She needed to be able to move about including standing and walking, for a few minutes each hour at work. *She would have been absent from work one time per month*. She would have been eight percent less productive than the average worker in the workplace. Tr. 474 (emphasis added).

Significantly in his second decision, ALJ Meyers found Plaintiff would have fewer absences than he had found in his first decision. Tr. 474. In his first decision, ALJ Meyers found Plaintiff would have been absent from work two times per month. Tr. 25. There is no explanation for the difference in the ALJ's absenteeism finding.

At step four, the ALJ found Plaintiff was not capable of performing her past relevant work. Tr. 483. At step five, the ALJ found that based on Plaintiff's age (44); education (high school); work experience; and residual functional capacity, there were jobs that existed in significant numbers that Plaintiff could perform, including sedentary level work as a final assembler, an addresser, and a document preparer.[2]

## DISCUSSION

**A.  The ALJ Erred When He Found Plaintiff Was Capable of Substantial Gainful Employment**

In his second administrative decision, the ALJ found that Plaintiff had the residual functional capacity to perform sedentary work (as defined in 20 CFR 404.1567(a) with additional physical limitations), with an absenteeism rate of one day per month. Tr. 474. The vocational expert testified that an individual with the residual functional capacity attributed to Plaintiff by

---

[2] Plaintiff disagrees she can perform the work of a document preparer, as this work has a reasoning level of three and she is limited to unskilled, repetitive, routine tasks. Dkt. 12 at 3 n.4.

REPORT AND RECOMMENDATION - 3

1 the ALJ could perform the identified jobs. Tr. 525-26. However, the vocational expert was then

2 asked whether missing one day of work per month would be tolerated during the first 90 days of

3 a new job:

4     Q    Okay. And the judge had asked about missing work one day a month, is that going to be tolerated within an initial work period, like an official --
5            the first 90 days?

6     A    Oh, probably not. I would say that it's pretty common for, you know, employers -- this is sort of a screening process, they want to make sure
7            that the employee's reliable. And if they're not showing up already in the first 90 days of work, three times or more, they're probably not going to
8            keep their job.

9     Q    And so if they're missing two or more days a month --

10     A    Yeah, not going to keep their job.

11     Q    Even if they had managed to make it through the initial period, but they're then going to, you know, two -- two, you know, more than two days a
12            month?

13     A    I think it's just a matter of time. They may make it 60 to 90 days. They may make it a second quarter, but probably not beyond that.

14 Tr. 529. Plaintiff relies on *Gatliff v. Commissioner*, 172 F.2d 690, 693 (9th Cir. 1999), which

15 holds that where it is established that a claimant can hold a job for only a short period of time,

16 the claimant is not capable of substantial gainful activity. The ability to engage in substantial

17 gainful activity, "means more than merely the ability to find a job and physically perform it; it

18 also requires the ability to hold the job for a significant periods of time."  Thus, based on the

19 residual functional capacity assessment, the vocational expert testimony, *Gatliff*, and the

20 regulations, Plaintiff contends she is not capable of substantial gainful activity due to her rate of

21 absenteeism. Dkt. 12 at 5-6.

22       The Commissioner argues that the agency need not consider whether a particular

23 employer's hiring practices prevent the claimant from working. Dkt. 21 citing 20 C.F.R. §§

REPORT AND RECOMMENDATION - 4

1  404.1566(c)(3). The Commissioner also argues that, without consideration of the screening
2  process, the vocational expert's testimony shows that Plaintiff would be able to perform other
3  work, unlike *Gatliff,* where the claimant suffered from mental limitations that would inevitably
4  result in termination after two months. *Id.* citing *Gatliff,* 172 F.3d at 692.
5      The question here, just as in *Gatliff*, is whether Plaintiff is able to maintain substantial
6  gainful employment – which by any measure is longer than ninety days – whether one describes
7  those ninety days as a "hiring practice" or "screening" or "trial period." The vocational expert
8  testified that an individual who would be absent one day a month would be fired after 90 days of
9  employment – "… they want to make sure that the employee's reliable. And if they're not
10 showing up already in the first 90 days of work, three times or more, they're probably not going
11 to keep their job." Tr. 529. The regulation cited by defendant, 20 C.F.R. 404.1566, acknowledges
12 that an individual is disabled, or not disabled, based solely on findings concerning her physical
13 and mental abilities and vocational qualifications, and not on factors such as lack of work in the
14 local area, cyclical economic conditions, and the hiring practices of employers. In this case, the
15 claimant's residual functional capacity includes an absence from work of one day per month and
16 this is the reason she would be terminated after the first 90 days of work.
17     Based on the ALJ's residual capacity assessment, the vocational expert testimony,
18 *Gatliff,* 172 F.2d at 693 (if a claimant can only hold a job for a short period of time, she is
19 disabled); and 20 C.F.R. 404.1574(c) (work that ends in six months or less due to impairment is
20 not substantial gainful activity), Plaintiff is disabled.
21 **B.     Whether the ALJ Violated the Law of the Case**
22     Plaintiff also argues that the ALJ violated the law of the case when he found Plaintiff
23 would be absent from work only one day per month when in his prior decision he found Plaintiff

would be absent two days per month. Tr. 26, 565.

The law of the case doctrine generally prohibits a court from considering an issue that has already been decided by that same court or a higher court in the same case. *Hall v. City of Los Angeles*, 697 F.3d 1059, 1067 (9th Cir. 2012). In the Social Security context, prior findings by an ALJ such as, for example, a step four determination that a claimant cannot perform his past relevant work generally "should not be reconsidered under the law of the case doctrine." *Id*. "The doctrine of law of the case comes into play only with respect to issues previously determined." *Quern v. Jordan*, 440 U.S. 332, 347 n.18 (1979). In other words, "the issue in question must have been decided explicitly or by necessary implication in the previous disposition." *United States v. Lummi Indian Tribe*, 235 F.3d 443, 452 (9th Cir. 2000). "Application of the doctrine is discretionary." *Id*. Thus, even if the doctrine applies, a court may exercise its discretion to depart from it because of exceptions that arise "when the evidence on remand is substantially different, when the controlling law has changed, or when applying the doctrine would be unjust." *Stacy*, 825 F.3d 563, 567 (9th Cir. 2016) (citing *Merritt v. Mackey*, 932 F.2d 1317, 1320 (9th Cir. 1991)).

In *Stacy,* there were two prior step four findings by ALJs that Stacy could not perform his past work. The Ninth Circuit noted that *although these findings were never affirmed by the district court on review*, "this is typically the type of determination that should not be reconsidered under the law of the case doctrine." *Id.* at 567 (emphasis added). The Ninth Circuit ultimately decided that *Stacy* was not the typical case because, on remand, the ALJ had heard new and highly probative testimony regarding the claimant's ability to perform his past work and made a new finding supported by that testimony. *Id.*

In this case, the ALJ made two residual functional capacity findings with different rates

of absenteeism, but there was no new or highly probative testimony to support the change in the ALJ's findings. In his February 2013 decision, ALJ Meyers concluded Plaintiff was limited to sedentary, unskilled, repetitive and routine work and would have two unscheduled absences per month. Tr. 25. In his September 28, 2016 decision, ALJ Meyers concluded Plaintiff was limited to sedentary, unskilled, repetitive and routine work and would have one unscheduled absence per month. Tr. 474. The Commissioner argues that, as in *Stacy,* the law of the case doctrine should not be applied because on remand, the ALJ took new testimony and received over 400 pages of medical evidence. However, the Commissioner does not dispute that the additional evidence was not materially different than what was before the ALJ at the first hearing and provides no rationale for the material change in the absenteeism rate from the ALJ's first residual functional capacity assessment to his second.

However, the question here is whether the previously-assigned Magistrate Judge decided the issue of Plaintiff's residual functional capacity assessment, either explicitly or by necessary implication. *See Quern,* 440 U.S. at 347 n. 18; *Lummi Indian Tribe,* 235 F.3d at 452. The Magistrate Judge found the ALJ erred in assessing Plaintiff's residual functional capacity because he had not considered all of the functional limitations contained in the medical opinion of Raymond West, M.D. Tr. 560. Plaintiff argues the ALJ's two-day absenteeism rate was at least implicitly upheld when the Magistrate Judge rejected the Commissioner's argument on appeal that the ALJ had sufficiently captured Dr. West's limitations in allowing Plaintiff two unscheduled absences per month (because the need for frequent breaks from standing, walking, or sitting during an eight hour work day is not addressed by having two unscheduled days off). Tr. 565. The undersigned does not agree that the two unscheduled absences, or any other part of the ALJ's first residual functional capacity, was implicitly or explicitly affirmed.

REPORT AND RECOMMENDATION - 7

The consequence of the Magistrate Judge's finding was that the ALJ was required to reassess Dr. West's opinion, and because Dr. West's opinion was inherently intertwined with the residual functional capacity assessment, the ALJ was also required to reassess Plaintiff's residual functional capacity. Tr. 567-568. That meant the ALJ was free to review additional evidence, hear new testimony, and come to entirely different conclusions assuming those conclusions were properly supported by the evidence. In sum, the ALJ did not violate the law of the case doctrine by reassessing Plaintiff's residual functional capacity, and arriving at a different conclusion as to the number of days Plaintiff would miss work.

**C.     Scope of Remand**

Plaintiff requests that the Court remand for payment of benefits. The 2016 vocational expert's testimony shows that absences even once a month during the first three months of work would prevent competitive work (Tr. 528) and if Plaintiff were absent twice a month, she is disabled (Tr. 529). Plaintiff details how her medical record supports a determination that she would be absent twice a month due to fatigue, nausea and vomiting caused by her hepatitis C and depression. Dkt. 12 at 9-11. Defendant offers nothing to refute these facts, but instead argues that further administrative proceedings are needed because there are conflicts in the vocational expert testimony.

First, Defendant argues the testimony of the 2016 expert is internally inconsistent because he testified that Plaintiff could work despite one absence per month but then also testified Plaintiff could not make it through the first 90 days. This is not inconsistent testimony. The first portion of his testimony explains why Plaintiff is employable; the second portion explains whether she is capable of maintaining substantial gainful employment.

REPORT AND RECOMMENDATION - 8

The Commissioner next argues that additional proceedings are necessary to resolve the conflict between the testimony of the 2013 vocational expert, who testified employers would tolerate up to three days per month of absences, and the 2016 vocational expert, who testified employers would tolerate no more than one absence per month. Defendant also argues that the "current research" used by the 2013 expert is more relevant to claimant's date of last insured. The Commissioner cannot have it both ways. She first urges the Court to ignore the 2013 residual functional assessment because it was superseded by the 2016 assessment. On the other hand, she wishes to use the superseded assessment to create a conflict with the 2016 assessment.

There is no unresolved conflict regarding the vocational expert testimonies. On remand, the ALJ was directed to reassess Plaintiff's residual functional assessment and determine Plaintiff's ability to perform other work. The ALJ did so and was free to rely on the 2016 vocational expert's testimony in making this determination. Remanding this case for yet another determination and yet more vocational expert testimony would create a "heads we win; tails let's play again" system of disability adjudication." *See Benecke v. Barnhart*, 379 F.3d 587 (9th Cir. 2004).

The appropriate remedy here is to remand for an award of benefits as (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ's own well-supported findings show Plaintiff is not capable of substantial gainful employment and is disabled due to her rate of absenteeism; and (3) there are exceptional facts – there have been two ALJ hearings and Plaintiff filed her claim more than seven years ago. *Trevizo v. Berryhill*, 871 F.3d 664, 683 (9th Cir. 2017) (finding that exceptional facts, including the fact that Plaintiff's application had been pending more than seven years, meant further proceedings would be unduly burdensome).

REPORT AND RECOMMENDATION - 9

## CONCLUSION

Based on the foregoing, the Court recommends that the Commissioner's decision be **REVERSED** and **REMANDED** for the calculation and award of benefits based on Plaintiff's alleged onset date of November 20, 2010.

Any objection to this Report and Recommendation or the attached proposed order must be filed and served no later than **July 9, 2018**. If no objections are filed, the Clerk shall note the matter for **July 11, 2018** as ready for the Court's consideration. If objections are filed, any response is due within 14 days after being served with the objections. A party filing an objection must note the matter for the Court's consideration 14 days from the date the objection is filed and served. Objections and responses shall not exceed **eight** pages. The failure to timely object may affect the right to appeal.

DATED this 18th day of June, 2018.

_____
BRIAN A. TSUCHIDA
Chief United States Magistrate Judge